ASAPH KNAPP *v.* THE TOWN OF MARLBORO.

*Covenant for quiet enjoyment implied in lease; but not extended by parol beyond the premises described by known or certain bounds.*

A covenant for quiet enjoyment against the lawful interruption of any party will be implied from a lease which contains no express covenants, but in which, after the description of the premises, the habendum is as follows: " to have and to hold, use, occupy, possess and enjoy in all the branches of husbandry and building thereon, as he, the said R., shall choose or may see proper, without interruption, for so long as wood grows and water runs, and to his heirs, executors, administrators, overseers, or any other person or persons that may represent him the said J. R."

In an action on the covenants in a lease for quiet possession, if the demised premises are described by known or certain bounds, (as in this case by a town line,) it cannot be shown by parol that the parties intended, designated or recognized a different boundary, and thus extend the operation of the covenant to premises other than those described.

COVENANT. The defendants, by their selectmen, on the 6th of April, 1795, demised, by a lease duly executed and recorded, to Jonathan Rising, " two hundred acres on the north side of the right numbered fifty-seven, bounded north on the north line of said right, east on the east line of said right, and west on the west line of said right, and to extend so far south as to contain two hundred acres, with a line parallel with the north line. To have and to hold, use, occupy, possess and enjoy in all the branches of husbandry and building thereon as he the said Jonathan Rising shall choose or may see proper, without interruption, for so long as wood grows and water runs, and to his heirs, executors, administrators, overseers, or any other person or persons that may personate or represent the said Jonathan Rising always," the above being the only provisions in the lease except those relating to the payment of the rent and its enforcement by distress and re-entry. The declaration averred that the defendants in and by said lease covenanted with the said Rising and his assigns that they should and might peaceably and quietly have, hold, use, occupy, possess and enjoy said premises, without interruption, &c., and then set forth a series of conveyances by which the plaintiff derived a title under said Rising to the north-west quarter of said two hundred acres, and alleged a disturbance in his possession and enjoyment

of a portion of the premises by an eviction by one Oliver Gillett
of Dover, who recovered a judgment for the same in an action of
ejectment against the plaintiff at the April Term of the Wind-
ham county court, 1853.   The defendants plead the general issue
and several special pleas in bar which were traversed, and a trial
by jury was had at the April Term, 1856,— UNDERWOOD, J.,
presiding.

Upon the trial the plaintiff introduced in evidence the charter
of the town of Marlboro, dated April 29th, 1751, showing one
right reserved for a school lot, and a plan of the town showing
said right allotted as lot No. 57, and situated in the north-west
corner of the town ; also the lease from the selectmen of Marlboro
to Jonathan Rising, dated April 6th, 1795, reciting that whereas
there is a right or lot of land which is numbered 57 in said town
of Marlboro which the inhabitants of said town hold by charter as
a school lot, and then proceeding to demise two hundred acres of
the same by the description and for the time, &c., as above set
forth, together with the chain of deeds set forth in his declaration,
showing a title in the plaintiff as one of the assigns of said Rising
to fifty acres in the north-west part of the two hundred acres
described in the lease ; also the record of a recovery in ejectment
by Oliver Gillett against the plaintiff at the April Term, 1853, of
the Windham county court, and a writ of possession issued thereon
and duly executed, from which record and writ it appeared that
the recovery of said Gillett was for a piece of land in Dover,
bounded on the south by the north line of Marlboro.   The
plaintiff also introduced evidence tending to prove that Rising
took possession of the premises described in his lease, and that he
and the successive grantees and lessees under him had continued
to occupy them, and that the plaintiff, soon after the conveyance to
him in 1834, took possession of the fifty acres in the north-west
corner of said school right which he continued to occupy until his
eviction from a part of the premises by the Gillett judgment and
writ of possession ; and the plaintiff then offered the deposition of
one Pliny Higley and other evidence tending to show that prior to,
and about the time of the execution of the Rising lease, the town
of Marlboro caused the school lot to be surveyed and located, and
that the northern boundary as then surveyed and the north-west

corner as then pointed out were from eight to twelve rods north of the line and corner as established in the Gillett suit, and that Rising was put in possession to said northernmost line, and that this line had at several times since been recognized and insisted upon by the selectmen of Marlboro as the north line of the school lot, and that in 1834, after the plaintiff had become interested in the premises the selectmen run out the lot, and that it was agreed and understood and that they directed the plaintiff to occupy to a certain fence north of the line recovered to by Gillett. To the deposition of Higley and to all the other testimony relating to the acts and declarations of the selectmen in reference to the boundaries of the leased premises the defendants objected, but their objections were overruled and the testimony admitted.

The plaintiff claimed that the recovery by Gillett of a portion of what had been recognized and pointed out and shown to him and to Rising and others by the selectmen of Marlboro as a part of the demised premises constituted a breach of the defendants' covenant for the quiet enjoyment of them; and in reference to this claim the defendants requested the court to charge the jury that the lease conveyed only land in Marlboro, and that Gillett had ousted the plaintiff only from land in Dover; that the plaintiff had not therefore been disturbed in the enjoyment of any land conveyed by the lease, and therefore could not recover; and that the premises conveyed by the lease and the covenant for their quiet possession could not be enlarged by parol proof so as to include or apply to land not in the town of Marlboro. The court declined so to charge, but did charge the jury among other things that it was a proper subject of inquiry in this suit, whether the town of Marlboro at the time they leased to Rising and Rising went into possession, located and designated the northern boundary of the school land *further north* than the line as established in the suit *Gillett* v. *Knapp;* that upon this point they might consider the testimony of Higley as given in his deposition in connection with the lease to Rising, and the other testimony in the case, giving it such weight as under the circumstances they might think it entitled; but that this inquiry was important only as it had a bearing on the alleged agreement and understanding of the selectmen of Marlboro and the plaintiff in 1834, as to his occupying

*thereafter* to the *fence* above referred to; that the important inquiry for the jury was, whether in 1834 the selectmen of Marlboro and the plaintiff recognized and agreed that said fence should be thereafter the north line of the school lands to which the plaintiff was to occupy and pay rent, and that, if the jury should find that such was the understanding, the plaintiff was entitled to recover, as it was conceded the land recovered of him lay south of said fence.

Under these instructions the jury rendered a verdict for the plaintiff. Exceptions by the defendants.

Much other testimony was introduced and several other questions were raised upon the trial in the county court, but as they were not passed upon in the supreme court, a statement of them is omitted.

*P. T. Washburn* and *Bradley & Kellogg,* for the defendants.

The premises conveyed by the defendants and the covenant for their quiet enjoyment cannot, by parol proof, be enlarged so as to include or apply to land not in the town of Marlboro. The lease recites the land as being the school lot numbered fifty-seven in Marlboro. It thereby limits the premises conveyed to land in that town. It sufficiently refers to the town plan, and that shows the north line of the school right as allotted to be the north line of the town, and the lease by bounding the premises "north on the north line of said right" does in terms bound them north by the town line.

If a deed mentions no monuments but specifies a line, and is not ambiguous in its terms, parol proof that a line other than the one mentioned was designated or agreed upon by the parties is not admissible; *Stone* v. *Clark,* 1 Met. 378; *Flagg* v. *Thurston,* 13 Pick. 145; *Cleveland* v. *Flagg,* 4 Cush. 76; *Cook* v. *Babcock,* 7 Cush. 526; *Prescott* v. *Hawkins,* 12 N. H. 19; *Butler* v. *Gale,* 27 Vt. 739; *Herring* v. *Wiggs,* 2 Tayl. 34, (4 U. S. Dig. 541 pl. 500); *Noble* v. *Bosworth,* 19 Pick. 314.

*C. N. Davenport* and *H. E. Stoughton,* for the plaintiff.

The defendants are estopped from saying that the line indicated by the fence to which the plaintiff claimed in the suit *Gillett* v. *him* is not the true line. The case shows that the defendant, by its selectmen, in 1834, pointed out this fence as the true north

line for the purposes of the plaintiff's occupation, and directed him to occupy to that line and pay rent, and that he has done it. Here are representations made by a landlord to his tenant of the boundaries of the premises demised. The tenant acts upon the faith of them in occupying and paying rent. Have we not here all the elements of an "estoppel in pais?" *Cutting* v. *Stone*, 23 Vt. 571.

The plaintiff would have been estopped from denying his landlord's title to that line. Why will not the estoppal hold "*e. converso?*"

The opinion of the court was delivered by

ISHAM, J. The declaration in this case is in covenant broken, in which it is averred that on the 6th of April, 1795, the town of Marlboro executed a perpetual lease to Jonathan Rising of lot number fifty-seven in that town, and therein covenanted, on the payment of a stipulated rent, for the quiet enjoyment of the premises without interruption or molestation. A part of the premises, it is averred, has been transferred to the plaintiff by regular assignments, and from which he complains he has been evicted by an elder and better title.

There is no express covenant for quiet enjoyment contained in the lease, but the doctrine was not questioned in the argument of the case that such a covenant will be implied from the language of the instrument, that the *lessee, or any other person who may personate or represent him, shall hold, use, occupy, possess and enjoy the premises without interruption;* *Hays* v. *Bickerstaff*, 2 Mod. 35. It is immaterial whether the covenant is express or implied. In either case the words amount to a general covenant for quiet enjoyment during the term; *Ellis* v. *Welch*, 6 Mass. 246. The provisions in the lease are general, and were obviously intended to secure to the lessee the use and occupancy of the premises during the term, against all lawful interruptions to any portion of the premises, whether on the part of third persons or from the lessors and those claiming under the town. There is no limitation to the quiet enjoyment of the premises under the lease, provided the stipulated rent is paid. In doubtful cases the rule of construction is more favorable for the lessee, and against the lessor; and

unless it clearly appears that the covenant was intended to be confined to interruptions on the part of the lessor, it will be extended to all lawful interruptions by any party, which defeats the title of the lessee to the premises leased.

The important question in the case arises, whether the plaintiff has been dispossessed of the premises, or any portion of them, which are described in the lease, and whether that dispossession was effected by a paramount title.  In determining that question it becomes necessary to definitely ascertain the boundaries of the land included in the lease as well as the location of the premises from which the plaintiff claims he has been dispossessed.  If the dispossession was of land included in the lease the action is well brought, but if otherwise the action clearly cannot be sustained.

The town of Marlboro was chartered in 1751, about forty-four years previous to the execution of the lease to Jonathan Rising. The plan of the town shows an allotment of lot number fifty-seven in the north-west corner of the town, and a reservation of that right for the use of schools.  The premises leased are described as being part of lot number fifty-seven, on the north side of said right, and bounded north on the north line of said right, east on the east line of said right, and west on the west line of said right, and to extend so far south as to contain two hundred acres with a line parallel with the north line.  There is no uncertainty or ambiguity in this description.  The north line of the town of Marlboro, as it was chartered, is made the north line of the premises leased.  The charter of the town with its boundaries, as well as the allotment of this right of land for schools was a matter of record, and by regular surveys was susceptible of precise and definite location.  It is also to be observed that the north line of Marlboro is a permanent and public monument, and one which controls lines, courses and distances, and when the premises leased are bounded by such a monument, that boundary cannot be varied by the acts of the parties, nor by the introduction of parol testimony showing that the parties designated or recognized a different line, or that the lessee was directed to occupy beyond it.  The operation of the covenant is confined to the premises and the boundaries mentioned in the lease, and to show a breach of that covenant those lines must be ascertained, and the premises of

which the plaintiff has been dispossessed must be shown to be within it. The case of *Cook* v. *Babcock*, 7 Cushing 526, is very similar to this case on this question. In that case land had been conveyed, bounded " north on the line of Blanford." That line had been established by act of the legislature. It was held that the line so established was the northern boundary of the land, and that parol evidence was inadmissible. to show that previous to the establishment of that line the line of Blanford was understood to be farther north, and defined by a line of marked trees, and that the parties intended to convey the land to the line of marked trees. The legal effect of that deed could not be changed by parol testimony showing that the north line of the town was different from that which had been established. The north line of Marlboro in this case was equally certain and established, and as equally free from ambiguity; and when these premises were bounded by that line, the true line of the town as established by the charter is conclusive upon the parties, and determines the land included in the lease ; *King* v. *Little*, 1 Cushing 436. This subject and the authorities which have been referred to, have been recently before this court in a case from the county of Grand Isle, and this doctrine was fully recognized ; *Fletcher* v. *Phelps*, 28 Vt. 257. In that case it was held that such lines were permanent monuments, and when referred to in a deed could not be varied or controlled by parol testimony showing a different line. Two things are rendered certain by this lease : the whole of the land was in the town of Marlboro, and was bounded on the north by the north line of that town. That being the extent of the lease, the inquiry arises, has the plaintiff shown that he was evicted from any land in that town which is included in the lease. On this point the case seems fatally defective for the plaintiff. Assuming for the purposes of this case that the recovery in the case of Gillett against the plaintiff was founded upon an elder title, and that it is conclusive not only on the parties, but also upon the town of Marlboro ; still, the fact exists in the case that the dispossession was of land north of the line of Marlboro and within the town of Dover. The plaintiff, therefore, has not been dispossessed of any portion of the premises included in the lease from the town of Marlboro to Jonathan Rising, nor of premises to which the

covenant, the breach of which is complained of, can attach.    The jury should have been instructed agreeably to the requests on the part of the defendant, that the lease conveyed land only in Marlboro, and that the dispossession being of land in Dover, the plaintiff had not been disturbed in the enjoyment of land conveyed by the lease.    The testimony of Higley, and of the acts of the selectmen of Marlboro, was improperly admitted to enlarge the provisions of that lease, or to include land not being in that town.    The selectmen by no act of their own can extend the liability of the town in that manner.    Whatever they may have done in authorizing the possession of land beyond the true north line of Marlboro as fixed by the charter must be regarded as private acts, and not binding on the town.    Without referring to other questions which were made in the argument of the case, we think this objection is fatal to the action.

The judgment of the county court is reversed, and the case remanded.