# King v. Reynolds.

*Action for Breach of Implied Covenant in Lease.*

1. *Lessee; lessor covenants to give possession to, unless stipulation to the contrary in lease.*—When there is no stipulation to the contrary in the lease, the lessor impliedly covenants, that the demised premises shall be open to entry, by the lessee, at the time fixed by the contract for him to take possession.

2. *Same; when no implied covenant to give possession to.*—But, if, after the time when the lessee is entitled to possession, under the lease, whether he has actual possession or not, a stranger trespasses on, or takes possession of, and holds the lands, this is a wrong to the lessee, for which the lessor is not responsible.

3. *Possession; when question for the jury, whether it is open to lessee.*—When, in an action by a lessee against his lessor, for a breach of the implied covenant·

to deliver possession, the evidence is conflicting, as to whether a trespasser was in possession of the lands, at the time fixed in the lease for taking possession, it is error to refuse a charge which submits this question to the jury.

APPEAL from Shelby Circuit Court.

Tried before Hon. JOHN HENDERSON.

This was a suit brought by H. C. Reynolds against F. R. King to recover damages for the breach of a contract of letting. The facts are stated in the opinion of the court. There was a verdict for the defendant. The refusal of the court below to give the charge, which is set out in the opinion, is assigned as error.

W. M. BROOKS, and M. T. PORTER, for appellant.—The charge requested by appellant should have been given, for King had no remedy against the acts of any trespasser who entered on the lands after the lease was made to Reynolds. Even if another person than the lessor, or lessee, was in possession of the lands at the time the lease was made, the contract of letting would not thereby have been broken.—Taylor's Land. and Ten. § 312; *Gardner. v. Keteltas*, 3 Hill (N. Y.) 330; *Abrams v. Watson*, 59 Ala. 529. There is no implied covenant in leases that the tenant shall be protected against damages caused by the wrongful acts of strangers who have no right or title to the demised premises.—*Moore v. Weber*, 71 Pa. St. 429; 10 Am. Rep's, 708.

BRADFORD & BISHOP, and WILSON & WILSON, for appellees. The charge was properly refused, for it assumed that King delivered, or transferred the possession of the land as a matter of fact, when this was a question for the jury. There must be a delivery of the actual possession of demised premises, for the statute which dispenses with livery of seizin, (Code, § 2195), does not apply to leases of land. Reynolds did not acquire possession of the land, and could not maintain any action against a trespasser.

STONE, J.—McMath, as the agent of King, on the 8th day of May, 1878, made a contract with Reynolds, by which he let to him for the residue of that year, a piece of grass or meadow land, on agreed terms of rent, with which Reynolds complied. It is not denied that McMath had authority from King to make the lease. Reynolds did not obtain possession of the premises, and the present suit is brought to recover of King, damages for failing to deliver possession to Reynolds, the tenant. The complaint alleges that by the terms of the lease, King bound himself to put the tenant in possession. It was not shown that the contract of letting was in writing,

and the averment stated above was not proved, as matter of fact. When Reynolds sought to obtain possession under his lease, Shortridge, a third party, disputed his right to take possession, claimed that he himself was the agent of King, and in possession, and, by threats, kept Reynolds out of possession, and occupied himself. To this extent there is no conflict in the testimony. There was conflict on two questions, first: Whether, at the time McMath gave the lease to Reynolds, such third party was in possession of the premises, and, second : Whether he was then the agent of King, as to this piece of land. The sole question raised by this record is : Whether it was the duty of the lessor, King, to put Reynolds in possession, or, was it the duty of the latter to take steps to obtain the possession. It is claimed for appellee that this duty rested on King, as one of the implied stipulations in the contract of letting.

The rulings on this question are irreconcilable. The English decisions are, that "he who lets, agrees to give possession, and not merely to give a chance of a law suit ; and the breach assigned being, that the defendant did not give the plaintiff possession," it was held that an action could be maintained by the lessee against the lessor.—*Coe v. Clay*, 5 Bingham, 440. In that case the letting was by unwritten contract, the tenancy to commence presently. A prior tenant held over, and the lessee failed to obtain possession. The same ruling was made in the Exchequer Chamber, 11 Excheq. 775. The English decisions have been followed in Missouri. *L'Hussier v. Zallee*, 24 Mo. 13 ; *Hughes v. Hood*, 50 Mo. 350. Against this ruling will be found a majority of American decisions, commencing with *Gardner v. Keteltas*, 3 Hill (N. Y.) 330. In that case the lessee failed to obtain possession, by reason that the former tenant held over. The court said : "I admit the covenant of quiet enjoyment means to ensure to the lessee a legal right to enter and enjoy the premises, and if he is prevented from entering into the possession by a person already in, under a paramount title, the action may be sustained. * * But, if the party holding is a wrongdoer, the remedy of the lessee is as perfect and effectual to dispossess him after, as that of the lessor was before, the execution of the lease. * * Upon the well settled construction of covenants of title and quiet enjoyment, it is not the duty of the landlord, when the demised premises are wrongfully held by a third person, to take the necessary steps to put his lessee into possession." *Gramiss v. Clark*, 8 Con. 36, and *Lawrence v. French*, 25 Wend. 443, are cited, but nothing decided in them sheds any light on the question we are discussing. Neither does *Nokes' Case*, 4 Rep. 80. *Pen-*

*dergrast v. Young*, 21 N. H. 234, states this principle, refer-
ring to *Gardner v. Keteltas, supra,* but it is pure *dictum. Sig-
mund v. Howard Bank*, 29 Md. 324 ; *Underwood v. Birchard*,
47 Vt. 305 ; and *Gazzelo v. Chambers*, 73 Ill. 75, all follow the
case in 3 Hill, and cite it as their authority. The older case
of *Cozzens v. Stevenson*, 5 Serg. & R. 421, had asserted the
same doctrine, and Taylor, "Landlord and Tenant," § 312,
quotes from the case of *Gardner v. Keteltas*, and approves it,
as the American doctrine, while admitting the English doc-
trine to be different.

With all due respect for the eminent jurists by whom the
decisions in 5 Serg. & R., and in 3 Hill, were pronounced, it
appears to us that in one phase of the question the argument
is faulty. The principle applicable to the case of the lessee's
eviction by the lessor himself, or, by a title paramount to
that of the lessor, certainly rests on impregnable grounds.
Such eviction is a breach of the implied covenant in every
lease in general terms, for quiet enjoyment, and, at once, bars
the lessor's right to recover rent, and confers on the lessee a
right of action, for the lessor's breach of covenant. And
when the lessee can not maintain his possession, in conse-
quence of the lessor's want of title to uphold his, the lessee's
possession, the latter need not wait for eviction, but may
yield possession, and sue his lessor for the breach—he taking
on himself the *onus* of proving the inability of the lessor to
protect his possession by a valid title. And so, when there
is no impediment to the possession, at the time fixed by the
terms of the lease for the lessee to take possession, it is no
breach of the covenant of quiet enjoyment, if a trespasser
without title subsequently enter and evict the lessee in whole
or in part. The lessee must meet such intrusions as that.
But how about the implications at the time—the very mo-
ment—fixed by the terms of the lease for the lessee to take
possession ? Who is responsible if there is a trespasser, or
tenant holding over, *then* in possession ? Must the lessor
clear the possession, or is this duty cast on the lessee ? This
question we do not understand to be fairly met in the follow-
ing authorities : 1 Washb. Real Prop. 427, (325); *Moore v.
Weber*, 71 Penn. St. 429. In Indiana, the implications are,
that it is the duty of the lessor to deliver possession.—*Spen-
cer v. Burton*, 5 Blackf. 57 ; *Clark v. Butt*, 26 Ind. 236. . In
Illinois—73 Ill. 75 ; in New York, *Gardner v. Keteltas*, 3 Hill
330—it would seem they have statutes authorizing a lessee
to dispossess a trespasser found in possession, or tenant
holding over, by summary remedy. In this State, no statute
exists by which a tenant, not having had prior possession,
can evict such intruder by summary proceeding. The lessor,

[King v. Reynolds.]

in such case, could invoke our summary remedy.—Code of 1876, §§ 3696–7, *et seq.* Such actions lie for unauthorized disturbances of prior actual possessions, and title can not be inquired into.

The authorities being in conflict, how does this question stand on principle? As was said in *Coe v. Clay,* 5 Bing. 440—decided long before *Gardner v. Keteltas* was—one who accepts a lease, expects to enjoy the property, not a mere chance of a law suit. A lease for a year, or term of years, is not a freehold. It is a chattel interest. The prime motive of the contract is, that the lessee shall have possession ; as much so, as if a chattel were the subject of the purchase. Delivery is one of the elements of every executed contract. When a chattel is sold, the thing itself is delivered. When realty is the subject, still there must be livery of seizin. Formerly, parties went upon the land, and there symbolical delivery was perfected. Now, the delivery of the deed takes the place of this symbolical delivery. Still, it implies that the purchaser shall have possession ; and without it, it would seem the covenant for quiet enjoyment is broken. Up to the time the lessee is entitled to possession under the lease, the lessor is the owner of the larger estate, out of which the leasehold is carved, and ownership draws to it the possession, unless some one else is in actual possession. The moment the lessor's right of possession ceases by virtue of the lease, that moment the lessee's right of possession begins. There is no appreciable interval between them, and, hence, there can be no interregnum, or neutral ground between the two attaching rights of possession, for a trespasser to step in and occupy. If there be actual, tortious occupancy, when the transition moment comes, then it is a trespass or wrong done to the lessor's possession. If the trespass or intrusion have its beginning after this, then it is a trespass or wrong done to the lessee's possession ; for the right and title to the property being then in the lessee for a term, it draws to it the possession, unless there is another in the actual possession.—Taylor, Landlord and Tenant, §§ 14–15 ; 3 Wash. Real Prop. 117–18.

We hold that when there is a contract of lease, and no stipulations to the contrary, there is an implied covenant on the part of the lessor, that when the time comes for the lessee to take possession under the lease, according to the terms of the contract, the premises shall be open to his entry. In other words, that there shall then be no impediment to his taking possession. But this implied covenant or agreement does not extend beyond that time. If, after the time when the lessee is entitled to have the possession, according to the

terms of the contract, a stranger trespass on, or take possession and hold, this is a wrong done to the lessee, for which the lessor is in no way responsible. And this is the rule, whether the trespass is committed before or after the lessee obtains actual possession. The lessor's covenant extends no farther than to guaranty he had authority to make the lease, and that the premises will be open for occupancy, when the contract gives to the lessee the right to enter.

The lease in this case was made to take effect as soon as the lessee complied with his part of the contract, by paying and securing the rent. When he did that, he was entitled to the possession. Was a trespasser then in possession of the premises, so as to forbid his taking possession? If so, King's implied covenant of quiet enjoyment was broken. The bill of exceptions informs us that the testimony on this point was in conflict. It became necessary then to submit this question to the jury. The defendant, appellant here, requested the following written charge: "When the defendant leased the land to the plaintiff, the contract of leasing transferred to the plaintiff all the possession the defendant had; and if a trespasser afterwards went into possession, his acts were a trespass against the lessee, and not against the landlord." This charge was refused, and defendant excepted. This charge was based on one phase of the testimony, namely: that portion which tended to show that the trespasser, or third party, was not in possession, until after Reynolds' right to take possession under the lease had accrued. If the possession was open when the contract was completed, on the part of Reynolds, then the trespass afterwards gave him no right of action against King. His sole recourse would be against the trespasser. The charge requested ought to have been given.

Reversed and remanded.